UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANNA PIERCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:19 CV 1886 ACL |
| ) | |
| ANDREW SAUL, ) | |
| ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Anna Pierce brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Pierce's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).  A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded for further proceedings.

### I. Procedural History

Pierce filed her application for benefits on May 30, 2017, claiming that she became

unable to work on January 1, 2012, at the age of thirteen.[1]  (Tr. 142.)  In her Disability Report, Pierce alleged disability due to migraines, depression, anxiety, asthma, postural tachycardia syndrome, and myasthenia gravis ("MG").[2]  (Tr. 183.)  Her application was denied initially. (Tr. 59.)  Following an administrative hearing, Pierce's claim was denied in a written opinion by an ALJ, dated November 7, 2018.  (Tr. 14-23.)  Pierce then filed a request for review of the ALJ's decision with the Appeals Council, which was denied on May 8, 2019.  (Tr. 1-4.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Pierce raises the following claims:  (1) the RFC is not supported by "some medical evidence;" (2) the ALJ "inappropriately and erroneously discounted the Plaintiff's subjective statements;" and (3) the ALJ erred in "affording the Plaintiff's treating physician's opinion 'little weight.'"  (Doc. 21 at pp. 3-8.)

## II.   The ALJ's Determination

The ALJ first found that Pierce had not engaged in substantial gainful activity since May 30, 2017, the protective filing date.  (Tr. 17.)  The ALJ concluded that Pierce had the following severe impairments: morbid obesity, asthma, and MG.  *Id.*  The ALJ found that Pierce did not

---

[1] The ALJ noted that, because Pierce protectively filed her application for benefits after she attainted age eighteen, no evaluation of child's insurance benefits was warranted.  (Tr. 15.)  As such, the earliest potential onset date of disability for Pierce's Title XVI claim is May 30, 2017, the protective filing date.  *See* 20 C.F.R. § 416.335.

[2] Myasthenia gravis is a chronic condition that causes muscles to tire and weaken easily.  It is most likely to develop in women aged between twenty and forty.  Brain & Nervous System Health Center, Understanding Myasthenia Gravis — the Basics, http://www.webmd.com/brain/understanding-myasthenia-gravis-basics (last visited Sept. 15, 2020).

have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 18.)

The ALJ next determined that Pierce had the RFC to perform the full range of sedentary work.  *Id.*

The ALJ found that Pierce had no past relevant work, but was capable of performing jobs existing in significant numbers in the national economy.  (Tr. 22.)   The ALJ therefore concluded that Pierce was not under a disability, as defined in the Social Security Act, from May 30, 2017, through the date of the decision.  *Id.*

The ALJ's final decision reads as follows:

> Based on the application for child's insurance benefits protectively filed on August 29, 2016, the claimant was not disabled as defined in section 223(d) of the Social Security Act through the date of this decision.
>
> Based on the application for supplemental security income protectively filed on May 30, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III.  Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This

"substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).  The Court must also consider any evidence which fairly detracts from the Commissioner's decision.  *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).  However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343

F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work."  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).  "RFC is a

medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability

remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV.  Discussion

Pierce argues that the RFC formulated by the ALJ is not supported by substantial evidence. She also contends that, in determining the RFC, the ALJ erroneously discounted Pierce's subjective statements and afforded little weight to the opinion of Pierce's treating physician.

A claimant's RFC is the most an individual can do despite the combined effects of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ determines a claimant's RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The ALJ "may not simply draw his own inferences about plaintiff's functional ability from medical reports;" instead, the RFC assessment should include a narrative discussion demonstrating how the evidence logically supports the ALJ's conclusions. *Strongson*, 361 F.3d at 1070. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *See Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). There is no requirement, however, that an RFC finding be supported by a specific medical opinion. *See Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011) (An ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.").

The ALJ in this case found that Pierce was capable of performing the full range of sedentary work. Pierce argues that the ALJ's decision is void of any explanation of what evidence supports an ability to perform sedentary work.

As an initial matter, the undersigned notes that Pierce only challenges the ALJ's findings with regard to her MG. The Court will therefore focus the discussion on Pierce's symptoms and limitations resulting from MG. MG is an autoimmune neuromuscular disorder described as follows in Pierce's treating neurologist's notes:

> Myasthenia gravis is a muscle weakness that often gets better when you rest and gets worse with activity. You can start the day feeling strong, but after a little activity, you find yourself feeling weak. It may be hard to talk or to keep your eyes focused, and your eyelids may droop.
>
> This problem starts when the immune system attacks the body's own muscle cells. The immune system is supposed to fight off viruses and other germs, but sometimes it turns on the person's own body. (This is called autoimmune disease.) Myasthenia gravis most often affects the muscles that control eye and facial movement and those that help us chew and swallow.
>
> Your doctor may prescribe medicine that can help improve your muscle weakness. He or she may recommend that you have surgery to remove the thymus gland, which may improve your immune system problem and help you regain your strength. There are other treatments that can help if you have repeated periods of weakness. With treatment and home care, you may be able to keep your strength and lead a normal life.

(Tr. 1124.)

The ALJ first acknowledged that Pierce was diagnosed with MG in February 2017 by treating neurologist Tariq Alam, M.D. (Tr. 19, 1134.) Dr. Alam started Pierce on Mestinon[3] at that time, and referred her to a rheumatologist due to a positive ANA.[4] (Tr. 1124.) The ALJ

---

[3]Mestinon is used to improve muscle strength in patients with MG. *See* WebMD, http://www.webmd.com/drugs (last visited September 17, 2020).

[4]The ANA test detects antinuclear antibodies. In most cases, a positive ANA test indicates the presence of an autoimmune reaction. http://www.mayoclinic.org/tests-procedures/ana-test/basics/definition/prc-20014566 (last visited on Sept. 17, 2020).

then summarized Pierce's treatment for MG. He noted that Dr. Alam "adjusted her prescription" in June 2017, to improve her muscle strength and energy level. (Tr. 19, 1197.) The ALJ is presumably referring to Dr. Alam's prescription of IVIG.[5] Pierce's examination on that date was unremarkable. (Tr. 19, 1200.) The ALJ stated that Pierce saw treating rheumatologist, Umar Daud, M.D., on July 26, 2017, at which time Dr. Daud found Pierce was "doing well clinically." (Tr. 19, 1603.) On August 18, 2017, Pierce reported sleeping 12 to 16 hours per day. (Tr. 19, 1306.) She was taking her Mestinon but had not started the IVIG due to problems with insurance. *Id.* Dr. Alam's office assisted Pierce with paperwork to obtain financial assistance for her medications. *Id.* The ALJ stated that Pierce's examination was again unremarkable. (Tr. 19.) Dr. Alam did, however, note weak motor strength in all extremities at that time, and on future visits. (Tr. 1309, 1376, 1419, 1883.) On November 9, 2017, Pierce reported that her fatigue and weakness had improved "5-10%" since her last visit. (Tr. 19, 1372.) Pierce felt that she was "more functional at school." *Id.* Dr. Alam increased Pierce's dosage of IVIG. *Id.* Pierce saw Dr. Daud in January 2018, at which time she reported her symptoms had improved on her medication regimen. (Tr. 19, 1644.) In March 2018, Pierce reported an exacerbation in her symptoms of weakness and fatigue. (Tr. 19, 1415.) Dr. Alam indicated that Pierce did not want to take steroids due to her excessive BMI. *Id.* Dr. Alam diagnosed Pierce with MG with exacerbation. (Tr. 1419.) He continued her medications and encouraged her to lose weight due to her excessive BMI.[6] (Tr. 19, 1419-20.) The ALJ

---

[5]IVIG is intravenous immunoglobulin. In severe cases, a MG patient will be prescribed IVIG, which helps the patient with a weakened immune system fight off infections. WebMD, Drugs & Medications: IVIG, http://www.webmd.com/a-to-z-guides/immunoglobulin-therapy (last visited Sep. 16, 2020).
[6]Pierce weighed 319 pounds, and had a BMI of 51.62 on that date. (Tr. 1418.) The ALJ recognized that Pierce's morbid obesity was a severe impairment. (Tr. 17, 19.)

noted that, in April 2018, Dr. Daud described Pierce's labs as "minimally abnormal," and found that her "symptoms are out of [pro]portion to the labs."  (Tr. 19, 1710.)   Dr. Daud ordered additional laboratory testing.   (Tr. 1710.)   On Pierce's follow-up visit two weeks later, Dr. Daud indicated that Pierce's lab work was "worse than before," but she was "feeling better on IVIG."   (Tr. 19, 1755.)   On June 14, 2018, Pierce reported that her medication improved her symptoms, that she was "doing well," and that her medication was "very beneficial" for her symptoms.   (Tr. 19, 1879.)   Dr. Alam continued her medications.   *Id.*

The ALJ summarized that Pierce "repeatedly had unremarkable clinical examinations," and "reported that medication improved her myasthenia gravis symptoms."  (Tr. 20.)   The ALJ concluded that, "[o]verall, the medical evidence of record indicates that the above-stated residual functional capacity, which limits the claimant to work at the sedentary exertional level, accommodates the restrictions imposed by the claimant's impairments."   *Id.*

In addition to the medical evidence, the ALJ discussed Pierce's daily activities and found they were inconsistent with her allegation of disability.   *Id.*   Specifically, the ALJ stated that Pierce began college at Saint Louis University in August 2017.   *Id.*   He noted that Pierce pursued an undergraduate degree in neuroscience, and earned As and Bs.   *Id.*

The ALJ lastly discussed the medical opinion evidence.   (Tr. 21.)   Dr. Alam completed a "Myasthenia Gravis Questionnaire" on May 15, 2018.   (Tr. 1813-18.)   Dr. Alam indicated that he had been treating Pierce for MG approximately every twelve weeks from February 2017 through the present date.   (Tr. 1813.)   Pierce's diagnosis was based on positive blood work for MG as well as lupus.   *Id.*   Dr. Alam indicated that Pierce exhibited the following symptoms: fatiguability of muscles following exercise, general fatigue, drooping upper eyelid, and diarrhea.   *Id.*   He found that Pierce was not a malingerer and her symptoms were reasonably consistent

with her impairments. (Tr. 1813-14.) Dr. Alam stated that Pierce has significant motor weakness of muscles of the extremities on repetitive activity while on prescribed therapy and that "just going through the motions of daily living exhaust her muscles." (Tr. 1814.) Pierce's fatigue and other symptoms were severe enough to interfere with her attention and concentration constantly. *Id.* He found that Pierce could tolerate only low stress jobs. *Id.* Dr. Alam expressed the opinion that Pierce required a job that permits shifting positions at will from sitting, standing, or walking, and required a 10 to 15 minute unscheduled break once a day during an eight-hour workday. (Tr. 1815.) Dr. Alam indicated that Pierce was likely to experience "good days" and "bad days," and would likely miss about two days of work per month. (Tr. 1818.) Dr. Alam stated that he was unable to provide an opinion regarding Pierce's functional limitations without a functional capacity test. (Tr. 1814.)

The ALJ found that Dr. Alam's opinions were "inconsistent with the evidence." (Tr. 21.) In particular, he found Dr. Alam's opinions were inconsistent with evidence that Pierce began attending college in August 2017 and earned As and Bs. *Id.* He also found that Dr. Alam's opinions were inconsistent with evidence showing that Peirce "repeatedly had unremarkable clinical examinations" and repeatedly reported that medication improved her MG symptoms. *Id.* He therefore found that Dr. Alam's opinions were entitled to "little weight." *Id.*

Pierce argues that the ALJ should have afforded controlling weight to Dr. Alam's opinions as they were well-supported and not inconsistent with other substantial evidence in the record.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v.*

*Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)).   The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."   *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole."   *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)).   The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions.   *Martise,* 641 F.3d at 927.   Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value.   *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion.   20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty.   20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

In this case, Dr. Alam is a neurologist that has been treating Pierce regularly since February 2017.   He is a specialist in the treatment of MG.   The ALJ discounted Dr. Alam's opinions based on the fact that they were inconsistent with the record.   With regard to Dr. Alam's treatment notes, it is true that Dr. Alam noted no abnormalities on examination, other than consistently noting Pierce's motor strength was weak in all of her extremities.   (Tr. 1309, 1376, 1419, 1883.)   The absence of other abnormalities on examination is not inconsistent with

Dr. Alam's opinions.  His opinions were based solely on Pierce's symptoms resulting from MG, which is a "muscle weakness" disorder.  (Tr. 1124.)  Dr. Alam stated that Pierce has significant motor weakness of the muscles of the extremities, and that "just going through the motions of daily living exhaust her muscles."  (Tr. 1814.)  Pierce's sporadic reports of some improvement with medication are not inconsistent with Dr. Alam's opinions.  Thus, Dr. Alam's opinions are supported by laboratory findings confirming the diagnosis of MG, his findings of muscle weakness on examination, and Pierce's consistent complaints of weakness and fatigue.

      The ALJ also cited Pierce's daily activities as inconsistent with Dr. Alam's opinions. The only example the ALJ provided was Pierce's attendance at Saint Louis University in August of 2017.  (Tr. 21.)  Although Pierce did attend college in the Fall of 2017, the ALJ fails to acknowledge that Pierce had to drop out of school by the next semester in April of 2018 due to the effects of her MG.  (Tr. 1848.)  Pierce took a medical leave of absence because her treatments were not working, and she was unable to walk back and forth from her dorm room to her classes.  *Id.*  Pierce's primary care physician, Tassy Hayden, M.D., authored a letter dated February 8, 2018, in support of her leave of absence.  (Tr. 1909.)  Dr. Hayden stated that Pierce's MG, "which causes a breakdown in communication between her nerves and muscles," was "currently too severe for her to attend classes."  *Id.*  Dr. Hayden stated that she fully supported Pierce's request for a medical leave of absence.  *Id.*  Additionally, Pierce received a number of special accommodations while she was attending classes, including flexible deadlines, medical absences, preferred seating on request, and a reader for examinations upon request.  (Tr. 314.)  Further, the record reveals that Pierce received similar accommodations during high school and was homebound for her freshman year due to her medical issues.  (Tr. 286-310, 164.)

For the reasons discussed above, the undersigned finds that the ALJ failed to provide "good reasons" for assigning little weight to Dr. Alam's opinions. No other physician provided an opinion regarding Pierce's limitations resulting from her MG. After discrediting Pierce's opinions, the ALJ concluded simply that "the evidence does not support the existence of limitations greater than the above-stated residual functional capacity." (Tr. 21.)

The ALJ has the duty to provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." Social Security Ruling 96-8p, 1996 WL 374184, at *7. A summary of the medical record does not fulfill the narrative discussion requirement. *George v. Astrue*, No. 4:10 CV 02136 RWS/NAB, 2012 WL 1032973, at *14 (E.D. Mo. Mar. 5, 2012). The ALJ, however, is not required to make explicit findings for every aspect of the RFC. *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003). The ALJ has no obligation to obtain additional medical evidence, if other evidence in the record provides a sufficient basis for the decision. *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). Where the evidence in the record is insufficient, however, the ALJ must have other medical evidence to support the RFC assessment. *Brown v. Colvin*, No. 4:13 CV 01693 SPM, 2014 WL 2894937, at *6 (E.D. Mo. June 26, 2014).

Here, the ALJ provided no specific explanation as to how the evidence supported his conclusion that Pierce could perform the full range of sedentary work. The ALJ first summarized the medical evidence and noted that the findings on examination were unremarkable. He next discredited the opinion of Dr. Alam, which was the only opinion in the record regarding Pierce's limitations resulting from her MG. The ALJ found that Pierce's subjective complaints were inconsistent with the record based solely on Pierce's attendance of college, while omitting all the facts concerning this failed attempt at attending school. The ALJ

then concluded that Pierce had the RFC to perform the full range of sedentary work, without citing any other medical opinion or medical evidence.

The undersigned finds that the RFC formulated by the ALJ is not supported by substantial evidence. *See Leiwe v. Astrue*, No. 4:06 CV 196 DDN, 2007 WL 5117110, at *8 (E.D. Mo. Feb. 26, 2007) (holding that the ALJ must have some evidence to support her RFC findings, even if the ALJ has lawfully rejected claimant's evidence). Pierce has sought regular treatment for her MG both before and after her diagnosis. She has consistently complained of symptoms of MG, and takes numerous strong medications for this impairment. The undersigned recognizes that the ALJ need not rely upon the opinion of a particular physician in formulating a claimant's RFC. Nevertheless, in this case, there is an absence of evidence in the record regarding how Pierce's MG, in combination with her other impairments, affects her ability to function in the workplace. Significantly, even Dr. Alam indicated that he was unable to assess Pierce's functional limitations in terms of her ability to walk, sit, stand, lift weight, twist, stoop, crouch, or climb without Pierce undergoing functional capacity testing. (Tr. 1814-16.) Thus, the ALJ had a duty to further develop the record to obtain medical evidence regarding Pierce's limitations. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (ALJ has independent duty to develop the medical record). The ALJ should have obtained a medical source statement from treating neurologist Dr. Daud, ordered a consultative evaluation, or obtained the services of a medical expert at the hearing to determine the effect of Pierce's MG and other impairments on her ability to work.

For the reasons discussed above, the ALJ's RFC determination is not based upon substantial evidence on the record as a whole, and this matter will be reversed and remanded. Upon remand, the ALJ shall properly consider the opinion evidence, obtain additional medical

evidence regarding Pierce's limitations, properly evaluate Pierce's subjective allegations, and formulate a new RFC based on the record as a whole.

/s/ Abbie Crites-Leoni  
ABBIE CRITES-LEONI  
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of September, 2020.